**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JAMES WILLIAMS,                    )
                                   )
          Plaintiff,               )     Civil Action No. 05-101
                                   )
     v.                            )     Judge McVerry
                                   )     Magistrate Judge Caiazza
WILLIAM S. STICKMAN, *et al.*,     )
                                   )
          Defendants.              )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Defendants' Motion
for Summary Judgment be granted.

### II. REPORT

This is a prisoner civil rights suit filed by James H.
Williams ("Williams" or "the Plaintiff"), a state prisoner, who
asserts that he was placed in Administrative Custody ("AC") in
November, 2002 on the basis of "false and erroneous" information
placed in his prison file, *i.e.* that he had sent inappropriate
love letters to a female prison employee. Williams was in AC
status from November, 2002, until April, 2005, when he was
released to the general population. During this period, Williams
repeatedly refused to attend Program Review Committee ("PRC")
hearings which would have provided him the opportunity to request
that he be returned to the prison's general population.

Williams complains that until a prison disciplinary hearing
held in 2004, he was unaware that the "false and erroneous

information" included in his file was the basis of a November, 2002, decision to place him in AC status. Prior to 2004, Williams believed his AC status was related to a conflict between himself and another inmate.[1] Williams complained that the information in his file is inaccurate but he was told by prison officials that there is evidence supporting the claim that he had sent the inappropriate letters.

Williams has commenced this action under the provisions of 42 U.S.C. §1983 asserting that the inaccurate information in his file violates his due process rights and that the offending entry should be expunged from his prison file. The Defendants have filed a Motion for Summary Judgment (Doc. 60) and the Plaintiff has responded (Doc. 71).  The motion is ripe for disposition.

## A.    **The Legal Standard**

Williams' burden in response to a well-pleaded motion for summary judgment is to present "specific facts showing that there is a *genuine issue for trial* . . . or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. <u>Matsushita Elec. Ind. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)(internal citation and quotation omitted, emphasis added).

---

1.  Williams also does not contest that he has a lengthy history of serious misconduct during his incarceration, including two assaults on prison personnel (Doc. 60, Ex. 27).

**B.**   **The Analysis**

The gravamen of Williams' lawsuit is that the decision to place him in Administrative Custody in November, 2002, was premised upon false information, and that his prison file continues to reflect an inaccurate fact. Williams concedes that his AC status has been reviewed periodically by the Prison Review Committee, and he does not contest that he has, at times, refused to attend the hearings. Likewise, Williams does not contest his long history of serious misconduct, including assaults on prison personnel  -which alone would justify his continued placement in administrative custody.  Nonetheless, Williams complains that the alleged inaccurate information in his file has never been removed, and, as a consequence, his constitutional rights have been violated.

Williams' claim arises under the Due Process Clause of the Fourteenth Amendment. In order to state a claim, Williams must first set out facts which demonstrate that he had a protected liberty interest impaired by the Defendants' actions. Hewitt v. Helms, 459 U.S. 460 (1983); Morrissey v. Brewer, 408 U.S. 471 (1972). Once the Court determines that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it. Morrissey, 408 U.S. at 481.

The Court of Appeals for the Third Circuit has held that long-term placement in administrative custody raises procedural

-3-

due process protections under the analysis mandated by <u>Sandin v.</u>
<u>Conner</u>, 515 U.S. 472 (1995). <u>See</u> <u>Shoats v. Horn</u>, 213 F.3d 140 (3d
Cir. 2000). Nonetheless, relying upon <u>Hewitt v. Helms</u>, 459 U.S.
460 (1983), the Third Circuit Court found that informal, periodic
review of the prisoner's administrative custody status satisfies
the requirements of due process. <u>Shoats</u>, 213 F.3d at 147.

Here, the same analysis is applicable. While the permanency
of Williams' placement in administrative custody appears to
satisfy the requirement that a liberty interest be implicated,
the periodic review of his status in administrative custody
provides the process due. The Plaintiff's allegation that the
Defendants relied upon "inaccurate" and "misleading" information
in denying him release to the general population is only
argument; *i.e.,* he disagrees with the Defendants' decision to
place him in administrative custody, and asserts that reference
in his prison file to letters sent to a female employee should be
expunged. The Supreme Court explained the scope of discretion
allowed to prison administrators in circumstances similar to
Williams':

> In assessing the seriousness of a threat to
> institutional security, prison administrators
> necessarily draw on more than the specific facts
> surrounding a particular incident; instead, they
> must consider the character of the inmates
> confined in the institution, recent and
> longstanding relations between prisoners and
> guards, prisoners inter se, and the like. In the
> volatile atmosphere of a prison, an inmate easily
> may constitute an unacceptable threat to the

-4-

> safety of other prisoners and guards even if he
> himself has committed no misconduct; rumor,
> reputation, and even more imponderable factors may
> suffice to spark potentially disastrous incidents.
> The judgment of prison officials in this context,
> like that of those making parole decisions, turns
> largely on purely subjective evaluations and on
> predictions of future behavior.

Hewitt, 459 U.S. at 474.  Thus, as the Third Circuit Court held

in Shoats, a prisoner may be placed in administrative confinement

even where no misconduct has occurred; all that is required is

that the prison provide an opportunity for the prisoner to

contest the "purely subjective evaluation" of his dangerousness.

Again, the holding in Shoats is instructive: "[b]ecause [the

inmate] has failed to provide any support for his assertions that

his PRC reviews were constitutionally inadequate, we hold that

the periodic reviews conducted by the PRC . . . comport with the

minimum constitutional standards for due process." Shoats, 213

F.3d at 147. Here, it is uncontested that the prison has provided

the necessary process, although Williams has repeatedly refused

to participate. Thus, Williams may not contest his placement in

administrative custody on the sole basis that he disagrees with

an entry in his prison file.

Nonetheless, Williams relies upon a Fourth Circuit case,

Paine v. Baker, 595 F.2d 197 (4th Cir. 1979), claiming that he

has a liberty interest in the contents of his prison file

sufficient to support a §1983 claim for expungement. Here, the

Plaintiff's claim is resolved by the following analysis.

The federal courts have determined that the filing of unfounded administrative charges against an inmate may result in a procedural due process violation, but only where the charges were not subsequently reviewed in a misconduct hearing. See Freeman v. Rideout, 808 F.3d 949, 952 (2nd Cir. 1986) (cert. denied, 485 U.S. 982(1988))(an allegation that a prison guard planted false evidence fails to state a claim where procedural due process protections are in place). Here, prison officials have granted Williams a hearing and an opportunity to be heard. In any event, the Defendants' refusal to expunge the statement Williams wants removed from his inmate file is not "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." See Sandin, 515 U.S. at 486; see also Hewitt, 459 U.S. at 466 (to state a due process claim a plaintiff must first set out facts which demonstrate that he/she had a protected liberty interest) and Freeman, 808 F.2d at 952.[2] In sum, Williams' has no liberty interest in the expungement of a statement placed in his inmate file which claims that he sent inappropriate love letters to a prison employee.

---

2. In Williams v. Federal Bureau of Prisons, 85 Fed. Appx. 299, 304 (3d Cir. 2004)(unpublished), the court, citing Johnson v. Rodriquez, 110 F.3d 299, (5th Cir. 1997) held that the Defendant's refusal to expunge from an inmate's files an incorrect pre-sentence report does not violate inmate's right to due process.

### III. **CONCLUSION**

For the reasons set out in this Report and Recommendation, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants, (Doc. 60), be granted.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by August 29, 2007.

August 13, 2007

Francis X. Caiazza
United States Magistrate Judge

cc:
JAMES H. WILLIAMS
AY-8692
SCI Huntingdon
1100 Pike St.
Huntingdon, PA 16654

-7-